IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CAMERON SHAW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10–cv–144–MJR–SCW |
| | ) |
| DONALD GAETZ, et al., | ) |
| | ) |
| Defendants. | ) |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to **28 U.S.C. § 636(b)(1)(B), FEDERAL RULE OF CIVIL PROCEDURE 72(b)**, and **LOCAL RULE 72.1(a)** for a Report and Recommendation on the issue of whether Defendants Jay Merchant, Kenneth Robinson, and Hiram Sloan were deliberately indifferent to Plaintiff's health and safety. It is **RECOMMENDED** that the Court **GRANT IN PART AND DENY IN PART** Defendants' motion for summary judgment (Doc. 55) and that the Court **ADOPT** the following findings of fact and conclusions of law.

## II. Findings of Fact

This matter stems from an incident which occurred in May 2008 while Plaintiff was housed at Pickneyville Correctional Center. Upon entering the Illinois Department of Corrections, Plaintiff was issued a low-bunk permit by the Health Care Unit because he suffered from a seizure disorder. On May 10, 2008, Plaintiff was assigned to cell R2-B-54. The cell Plaintiff was assigned to already had an inmate occupying the cell, Inmate Mitchell, who did not have a low-bunk permit but who

was occupying the lower bunk upon Plaintiff's arrival.  Plaintiff acknowledges that he can not recall whether he told Inmate Mitchell that he had a low bunk permit but alludes in his responsive brief that if he had asked his cellmate to move or forced him to move that his safety could have been compromised.  Plaintiff does state that he told numerous other people about his issues with the bunks but not his cellmate.  Plaintiff continued to, instead, occupy the top bunk and on May 22, 2008, while occupying the top bunk, Plaintiff suffered a seizure and fell from the top bunk, suffering injuries.

Plaintiff filed a Complaint against Defendants Sloan, Merchant, and Robinson for the injuries he sustained and for their failure to provide him with a low bunk.  As to Defendant Sloan, Plaintiff states that Sloan was the placement officer who failed to assign Plaintiff to a proper cell on May 10, 2008 in order to accommodate Plaintiff's low bunk permit.  Sloan is a Placement Officer at Pickneyville Correctional Center but maintains that he was not the Placement Officer on May 9 or 10, 2008 when Plaintiff was assigned to cell R2-B-54.[1]  According to Sloan, if an inmate has a low bunk permit, the Placement Office is to ensure the inmate is placed in a cell with a cellmate that does not have a low bunk permit, but it is the inmate's responsibility once placed in the cell to inform his cellmate of his low bunk permit but can inform an officer or lieutenant if the cellmate refuses to move (Doc. 56 Ex. B at ¶¶ 3-5; 8).

On May 10, 2008, after Plaintiff was moved to R2-B-54, Plaintiff wrote a letter to the Placement Office, informing the department that he was placed in a upper bunk and that he had informed the Lieutenant to check his file for his low bunk permit (Doc. 37 Ex. 5D at p. 15).  His

---

[1] Defendant Sloan had originally admitted to and believed he was the Placement Officer on duty on May 9 and 10 of 2008, however, in preparation for his summary judgment motion he reviewed his records and determined that he was not the Placement Officer at that time (Doc. 54). Defendant Sloan sought leave to amend his Answer in order to clarify that while the Placement Officer placed Plaintiff in the specified cell on May 10, 2008, he was not the Placement Officer on that date (Doc. 59).

Complaint also included another letter written to the placement officer on May 16, 2008, informing them that he was still in the top bunk and was in danger of falling if he had a seizure (Doc. 1 Ex. 5C at p.18). Plaintiff also wrote Warden Merchant, also a defendant in this case, regarding his cell placement, but his letter was addressed prior to May 10, 2008. Plaintiff stated that while he wrote Merchant, he did not inform him about his issues with Inmate Mitchell because he wrote Merchant prior to his cell assignment change and wrote to inform the warden that he was continually being given upper bunk assignments and his permit was not being honored (Doc. 56 Ex. A at p. 31). He again wrote Warden Merchant after May 22, 2008, on or about October 13, 2008, informing the warden that his lower bunk permit was not being honored (*Id.* at pp. 31-32). He did not recall writing him a letter between May 10, 2008 and May 28, 2008, although he stated in his deposition that he wrote "request slips" during that time (*Id.*).

Plaintiff also asserts that he informed Defendant Robinson of his issues with his bunk assignment. Plaintiff believed that Robinson was the lieutenant on the three to eleven shift during May of 2008 and that he had served in Iraq prior (Doc. 56 Ex. A at pp. 43-44). Plaintiff alleges that after being placed in cell R2-B-54, he informed Defendant Robinson about his low bunk permit once during the three to eleven shift and once on his way to the chow line (*Id.* at pp. 46-48). He also believes that Robinson was present on May 28, 2008 and responded to his injury (Doc. 56 Ex. F). However, Defendant Robinson maintains that he was the day shift lieutenant and never worked the three to eleven shift in May 2008 and had taken a scheduled day off on May 22, 2008, the date Plaintiff suffered a seizure and fell from his bunk (Doc. 56 Ex. G at ¶2). Although he acknowledges he was in the military, Defendant Robinson maintains that he had not served in the military since 1999 and did not serve in Iraq (*Id.* at ¶ 3). Robinson maintains that he was never informed that Plaintiff's cellmate refused to give Plaintiff the lower bunk, but stated that it was an inmate's responsibility to inform an officer or

lieutenant that he had a low bunk permit and that a cellmate was refusing to accommodate (*Id.* at ¶¶ 6-9). Robinson has not stated, however, that he did not know Plaintiff had a low bunk permit.

Plaintiff also insisted he informed a lieutenant on the day shift prior to moving into the cell on May 10, 2008 that he had a low bunk permit but he did not recall the name of the lieutenant although he thought it was a Lieutenant Lear. IDOC has informed Plaintiff that a Lear does not exist (Doc. 56 Ex. A at pp. 17-18; 47). Plaintiff also claims that he told the lieutenant on the 7-3 shift twice about his low bunk permit (*Id.* at pp. 18-19).

### III. Conclusions of Law

**A. Summary Judgment Standard**

Under **FEDERAL RULE OF CIVIL PROCEDURE 56(c)**, summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986).** *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.,* **422 F.3d 603, 607 (7th Cir. 2005)**. The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, **398 U.S. 144, 160 (1970).** *See also Lawrence v. Kenosha County*, **391 F.3d 837, 841 (7th Cir. 2004)**. A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986);** *Ballance v. City of Springfield, Illinois Police Department*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger,* **388 F.3d 1015, 1027 (7th Cir. 2004).** Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004).** *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial, whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> [T]his standard mirrors the standard for a directed verdict under **FEDERAL RULE OF CIVIL PROCEDURE 50(a)**, which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986).** *See also Celotex Corporation v. Catrett*, **477 U.S. 317, 322-23 (1986);** *Packman v. Chicago Tribune Co.*, **267 F.3d 628, 637 (7th Cir. 2001);** *Sybron Transition Corporation v. Security Insurance Company of Hartford*, **107 F.3d 1250, 1255 (7th Cir. 1997).**

A showing of a mere factual disagreement between the parties is insufficient, the factual issue must be "material," meaning that the issue must be one affecting the outcome of the suit. *See Outlaw v. Newkirk*, **259 F.3d 833, 837 (7th Cir. 2001)**. A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, **477 U.S. at 323**. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*.

### B. Deliberate Indifference

Plaintiff's Complaint maintains that Defendants failed to protect Plaintiff from an obvious risk of serious harm by failing to place him on a low bunk as his medical slip required. In order to show that officials failed to protect Plaintiff in violation of the Eighth Amendment, Plaintiff must satisfy the objective and subjective components applicable to all Eighth Amendment claims. *See McNeil v. Lane*, **16 F.3d 123, 124 (7th Cir. 1994);** *Wilson v. Seiter*, **501 U.S. 294, 302 (1991).** He must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that

the defendants acted with "deliberate indifference" to that danger. *Farmer v. Brennan*, **511 U.S. 825, 834 (1994)**. The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *See Jackson v. Duckworth*, **955 F.2d 21, 22 (7th Cir. 1992)**. The objective analysis examines whether the conditions of confinement "exceeded contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennet*, **17 F.3d 1574, 1579 (7th Cr. 1994)**. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman*, **452 U.S. 337, 347 (1981);** *see also Jamison-Bey v. Thieret*, **867 F.2d 1046, 1048 (7th Cir. 1989)(citing** *Meriwether v. Faulkner*, **821 F.2d 408, 416 (7th Cir. 1987)).**

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of unconstitional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, **955 F.2d at 22.** The subjective component requires a prison official to have a sufficiently culpable state of mind. *See Wilson*, **501 U.S. at 298,** *McNeil,* **16 F.3d at 124.** In this case, the relevant state of mind is deliberate indifference to an inmate's safety. The deliberate indifference standard is satisfied if the plaintiff shows that the prison officials acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer v. Brennan*, **511 U.S. 825, 842 (1994)**. The test is whether the employee knew the inmate faced a serious danger to his safety and could have easily averted the danger, yet failed to do so. *Case v. Ahitow*, **301 F.3d 605, 607 (7th Cir. 2002)**. A plaintiff must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often "by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, **86 F.3d 90, 92 (7th Cir. 1996).**

*1.     Jay Merchant*

Plaintiff alleges in his Complaint that Defendant Merchant failed to assigned Plaintiff to a low-bunk despite having a low-bunk permit. Defendant Merchant was the acting warden at the time that Plaintiff was placed in the cell with Inmate Williams and on the date Plaintiff suffered his seizure and fell off of the top bunk. As the doctrine of respondeat superiour is not applicable to § 1983 claims, Defendant Merchant can only be held liable if he was "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, **266 F.3d 724, 740 (7th Cir. 2001) (quoting** *Chavez v. Ill. State Police*, **251 F.3d 612, 651 (7th Cir. 2001))**. In order to have been deliberately indifferent to Plaintiff, Defendant Merchant must have had knowledge of the impending danger to Plaintiff's safety.

While Plaintiff alleges that he informed Defendant Merchant of issues with his low-bunk permit, the evidence before the Court shows that Defendant Merchant lacked knowledge of the serious risk of injury to Plaintiff. While there is evidence that Plaintiff wrote to Defendant Merchant about his issues with his low-bunk permit, his conversations with Defendant Merchant occurred prior to being moved into the cell with Inmate Williams, on May 10, 2008, and then again after he suffered his fall on May 22, 2008. There is no evidence that Plaintiff complained to Defendant Merchant during the relevant time period, while he was housed with Inmate Williams. In fact, Plaintiff concedes that he did not complain to Merchant at any point between May 10, 2008 and May 22, 2008, nor did he complaint to Defendant Merchant about Inmate Williams' refusal to give Plaintiff the low bunk. Instead, Plaintiff stated in his deposition that he talked to Merchant prior to being moved to R2-B-54 because he was still being assigned upper galleries and top bunks and the officers were not enforcing his permit (Doc. 56 Ex. A at p.31:7-24). He did not write Warden Merchant between May 10 and May 22 and never informed him about his issues in cell R2-B-54 (*Id.* at pp. 32-33). Thus, there is no evidence that

Defendant Merchant had any knowledge that Plaintiff was having problems obtaining a low bunk while being housed with Inmate Williams. As Defendant Merchant was never informed of Plaintiff's issues, nor did Plaintiff complain to Defendant Merchant during the relevant time period, there is no evidence that Defendant Merchant was deliberately indifferent to Plaintiff's health or safety. *See Pope*, **86 F.3d at 92.** Thus, Defendant Merchant is entitled to summary judgment.

   2.   *Kenneth Robinson*

As to Defendant Kenneth Robinson, Defendant asserts that he is entitled to summary judgment because Plaintiff never informed him that his cellmate was refusing to honor Plaintiff's low-bunk permit. Plaintiff has asserted that Defendant Robinson was the lieutenant on the three to eleven shift at Pickneyville Correctional Center who he informed about his issues with obtaining a low bunk (Doc. 56 Ex. A at p. 43:16-23). Plaintiff described Robinson as 5 foot 10-11 inches in height, medium build, who was not bald and did not wear glass (*Id.* at p. 44). He also indicated that Robinson had just returned from Iraq or somewhere in the war (*Id.* at p. 45:10-15). However, Defendant Robinson argues that Plaintiff is mistaken that he spoke with Lieutenant Robinson. In fact, Defendant argues that he is actually the day shift lieutenant at Pinckneyville and although was in the military, he has not served since 1999 and was never stationed in Iraq. Further, Defendant argues that he was not on duty on May 22, 2008 and was not present at the time Plaintiff suffered his injuries. Defendant argues that Plaintiff is mistaken as to which lieutenant he complained to and that Plaintiff never did inform Robinson of his low bunk issues.

However, the Court finds that there is an issue of material fact as to whether Plaintiff informed Robinson or specifically complained about his issues with not being able to utilize his low bunk permit. While in Plaintiff's deposition, he does indicate that Defendant Robinson was a lieutenant

on the three to eleven shift and that he had recently returned from Iraq, Plaintiff indicates several times about his confusion over the names of the lieutenants at Pickneyville who he complained to about his low bunk permit.  Plaintiff states on at least two occasions that he was unsure of which lieutenants were on duty as he believed that Defendant Robinson was on duty on May 22, 2008 at the time of incident but he acknowledged that Defendant Robinson had indicated in his affirmative defenses that he was not on duty on that date.  Plaintiff stated that he was hoping to get more information about the ID of the lieutenants on duty and had filed an interrogatory seeking the information, as he didn't know (Doc. 56 Ex. A at p.47:1-14; 48:11-18; 18:12-23).  Plaintiff also indicated that he spoke with a cellhouse lieutenant on May 10, 2008 prior to being moved in the cell with Inmate Williams.  Plaintiff stated that he complained to the lieutenant as he was being moved to the cell, and that the lieutenant said he would take care of it (*Id.* at 19:6-13).  While Plaintiff said he originally believed that lieutenant was Lieutenant Lear, he has since learned that IDOC does not have an employee of that name, so he is unsure of the identity of the day lieutenant he spoke to (*Id.* at p.17-18:9).

Here, the Court finds that there is an issue of fact as to whether Plaintiff complained to Defendant Robinson.  Plaintiff insists in his deposition that it was Lieutenant Robinson who he complained to on two occasions, although his description of the officer on duty at the time seems to suggest that it was not Defendant Robinson.  Plaintiff also insists that he spoke with a lieutenant on the seven to three shift and although he thought that lieutenant's name was Lear, he does not know the identity of the officer as IDOC has confirmed that a Lieutenant Lear does not exist.  Defendant Robinson, meanwhile, has indicated that he was a day shift lieutenant at Pinckneyville.  Therefore, there is an issue of fact as to whether Robinson was, in fact, the lieutenant on duty on May 10, 2008 when Plaintiff informed a day lieutenant of his low bunk permit as he was being transferred to cell R2-B-54.  Defendant Robinson has not offered any evidence as to whether he was on duty at the time of Plaintiff's

transfer to his new cell, so the Court finds that there remains an issue of fact as to whether Robinson was informed by Plaintiff, and thus placed on notice, of Plaintiff's low bunk issues either during the day or three to eleven shift at some point in May of 2008.

The Court also notes that Robinson does not state that Plaintiff did not tell him about his low bunk permit. He only states that Plaintiff didn't tell him that his cellmate refused to move. While Defendant Robinson maintains that it is the institution's policy that inmates must inform their cellmate of their low bunk permit and then inform the guards if the cellmate refuses to move, Defendant has failed to offer any written policy substantiating that claim. Thus, there remains an issue of fact as to whether the burden was on Plaintiff to try to enforce his low bunk permit and then, if that method failed, to inform the guards of his permit. Thus, the undersigned **FINDS** that Defendant Robinson is not entitled to summary judgment on Plaintiff's claims as issues of material fact still exist.

3. *Hiram Sloan*

As to Hiram Sloan, Defendant Sloan also argues that he is entitled to summary judgment because he was not the Placement Officer when Plaintiff was assigned to the cell with Inmate Williams on May 10, 2008. Defendant Sloan initially acknowledged that he was the Placement Officer on May 10, 2008, but has since reviewed his records and determined that he was not, in fact, the placement officer, and instead that Troy Myers was the Placement Officer on May 9 and 10, 2008, the dates that Plaintiff would have been assigned and then transferred to cell R2-B-54.

Plaintiff, however, argues that Defendant Sloan admitted in his Answer that he worked on May 10, 2008 as the Placement Officer. Plaintiff also states that Defendant had the responsibility to provide him with a low bunk not just a cell with an open low bunk. However, Plaintiff has failed to present any evidence that the Placement Officer is under a duty to insure that Plaintiff is given a low bunk. The only such evidence on the record regarding a Placement Officer's duty is an affidavit from

Defendant Sloan describing his duties as a Placement Officer. Sloan's affidavit indicates that, as a Placement Officer, he is required to take several variables into consideration when assigning cell assignments including an inmates medical needs (Doc. 56 Ex. B at ¶2). When presented with an inmate with a valid low bunk permit, the Placement Officer is only required to insure that the inmate holding the permit is placed in a cell with an inmate who does not hold a low bunk permit, but that it is the inmates' responsibility to ask his cellmate to move to the top bunk and then to take his issue to the guards if the cellmate refuses to move (*Id.* at ¶¶ 3-4). While Plaintiff argues that such a policy would put his welfare at risk by causing conflict with his potential cellmate, he has not pointed to any evidence which disputes the evidence that a Placement Officer does not have the duty to insure an inmate with a low bunk permit actually obtains a low bunk.

Plaintiff further argues that he wrote a letter to the Placement Office informing them of his perdicament with his cellmate on May 10, 2008. However, even if the Placement Office received this letter, there is no evidence that Defendant Sloan was on notice regarding Plaintiff's low bunk issues. Although Defendant Sloan initially indicated that he was the Placement Officer on May 10, 2008, recent review of his records indicates that he was not the Placement Officer on May 9 and 10, 2008 and Defendant Sloan has amended his Answer to indicate this fact. Further, Plaintiff has presented no evidence to suggest that Defendant Sloan was the Placement Officer on the dates at issue in this case nor that he received and read the letter Plaintiff sent to the Placement Office. Thus, there is no evidence to suggest that Defendant Sloan had knowledge of the threat to Plaintiff's safety by not being able to occupy the low bunk. Accordingly, the undersigned **FINDS** that Defendant Sloan is entitled to summary judgment on Plaintiff's claims.

### IV. Conclusion

Accordingly, the Undersigned **RECOMMENDS** that the Court **GRANT IN PART**

**AND DENY IN PART** Defendants' motion for summary judgment (Doc. 55) and **FIND** that Defendants Jay Merchant and Hiram Sloan are entitled to summary judgment as a matter of law while Defendant Kenneth Robinson's motion should be denied as there are issues of material fact. Should the Court adopt this Report, only the claims against Defendant Robinson will remain in this case.

Pursuant to **28 U.S.C. § 636(b)(1)** and **LOCAL RULE 73.1**, the parties shall have fourteen (14) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.

IT IS SO ORDERED.

DATED: January 6, 2012

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge